FILED
7/25/2022 11:22 AM
Mary Angie Garcia
Bexar County District Clerk
Accepted By: Jason Pastrano
Bexar County - 408th District Court

CAUSE NO. 2022CI13865

| | | |
|---|---|---|
| **JEREMY BELLAMY** | § | IN THE DISTRICT COURT |
| VS. | § | _____ JUDICIAL DISTRICT |
| **FORD MOTOR COMPANY** | § | BEXAR COUNTY, TEXAS |

**PLAINTIFF'S ORIGINAL PETITION**

NOW COMES JEREMY BELLAMY (**"Plaintiff" or "Bellamy"**), and files his Original Petition against Defendant, FORD MOTOR COMPANY (**"Defendant" or "Ford"**) and in support of would respectfully show the Court the following:

### I.   SUMMARY

1. Ford was the manufacturer of a certain 2019 Ford Explorer Police Intercept Vehicle, VIN 1FM5K8AR5KGB55435, purchased by Universal City Police Department and used by Bellamy as his patrol car (**"Vehicle"**).

2. On March 22, 2021, Bellamy was injured while at work and performing his duties as a police officer. While on duty, Bellamy was found by a passerby slumped over the steering wheel of the Vehicle, unconscious and non-responsive. Bellamy was taken to the emergency room at Northeast Methodist Hospital where physicians observed Bellamy exhibiting symptoms of altered mental status, hypertension, slow speech, unsteady gait, memory loss and shortness of breath.

3. After other causes had been ruled out, Bellamy was tested and diagnosed with carbon monoxide poisoning, and pneumonia caused by aspiration of fluids triggered by the carbon monoxide poisoning. He was admitted to the hospital and discharged on March 26, 2021.

4. Bellamy seeks damages for the past and future economic and non-economic damages relating to his carbon monoxide poisoning, including cognitive impairment, migraines, injuries, permanent disabilities, mental anguish, pain and suffering, loss of future income, and loss of enjoyment of ordinary activities that he suffered as a result of the incident, which was directly and proximately caused by defects in Ford's manufacturing, designing, and assembling of the Vehicle, failure to warn and other marketing defects, including those related to the predictable and ordinary use of the Vehicle. Ford knows that police idle for long periods of time in their vehicles designed and marketed for police use. Ford knows that use causes a serious and foreseeable risk of injury or death from carbon monoxide poisoning.

## II.   PARTIES

5. Plaintiff, JEREMY BELLAMY, is an individual whose address is 13111 Heathers Arrow, Saint Hedwig, Texas 78152.

6. Defendant, FORD MOTOR COMPANY, is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business in Dearborn, Michigan, and was at all relevant times authorized and/or qualified to do business, and was and is doing business, in the State of Texas and may be served with process through its registered agent, CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, Texas 75201-3136.

## III.   DISCOVERY CONTROL PLAN

7. As provided in Rule 190, Texas Rules of Civil Procedure, Plaintiff intends to conduct discovery under Level 2.

## IV.   VENUE & JURISDICTION

8. Venue is proper in this county in that the events giving rise to this cause of action occurred within Bexar County.

9. The damages sought in this suit are within the jurisdictional limits of the Court. As required by Rule 47, Texas Rules of Civil Procedure, Plaintiff states that Plaintiff seeks monetary relief over $250,000 but not more than $10,000,000.

## V. FACTUAL BACKGROUND

10. On or about March 22, 2021, Jeremy Bellamy, a 46-year-old police officer and 16-year employee of the Universal City Police Department, in Universal City, Texas sustained injuries and damages arising out of or relating to an incident in Universal City, Texas. On March 22, 2021, Bellamy was injured while at work and performing his duties as a police officer. While on duty, Bellamy idled in the Vehicle in a usual intersection ideal for catching both speeders and stop sign rollers. As he dutifully fulfilled his obligations as a public servant, the odorless, tasteless, yet poisonous levels of carbon monoxide slowly climbed in his Vehicle. No warning sensors were tripped. There was no indication at all that the interior of the Vehicle had become a gas chamber. Bellamy was found unconscious and non-responsive in his police vehicle by a passerby, who called 911, in his 2019 Ford Explorer patrol vehicle. His first memory is regaining consciousness when his police radio sounded, and seeing his Vehicle surrounded by flashing lights of emergency vehicles.

11. Bellamy was taken to the emergency room at Northeast Methodist Hospital. Bellamy was exhibiting symptoms of memory loss, an altered mental state, slow speech patter, facial droop on the right side, and an unsteady gait. In an attempt to isolate Bellamy's diagnosis, hospital staff performed blood testing, CT scans, MRIs, and EEGs, among other tests. After numerous other causes had been ruled out, (including stroke, pulmonary embolism, deep vein thrombosis, and heart attack), he was tested and diagnosed with carbon monoxide poisoning, and pneumonia caused by aspiration of fluids triggered by the carbon monoxide poisoning. He was admitted to the hospital and discharged on March 26, 2021.

12. The blood testing done for carbon monoxide ("**CO**") poisoning is used to find carboxyhemoglobin ("**COHb**"), a product of the binding of carbon monoxide in the blood. The industry acceptable norms for levels of COHb range from .05%-1.0%. While difficult to establish a normal range of CO in the blood, Bellamy's level of COHb was 7.8% when tested on March 22, 2021.

13. CO replaces oxygen from hemoglobin and thus COHb effectively reduces the blood's oxygen-carrying capacity. The effect is of such elevated levels of COHb causes the oxygen in the blood to be replaced with carbon monoxide, starving the body's tissues and organs of oxygen. The brain and the heart are particularly sensitive to oxygen deprivation.

14. Bellamy continues to experience health issues related to the incident and continues to seek medical attention to these issues. He experiences chronic migraines, issues with sleeping, nightmares, and short-term memory loss. Since the incident, he has been diagnosed with generalized anxiety disorder and post-traumatic stress disorder. Bellamy has consulted a neurologist, a pulmonologist, and continues care through his primary care physician. He requires future treatment from a traumatic brain injury specialist.

15. Defendant, FORD MOTOR COMPANY ("**Ford**") is the manufacturer of the product Vehicle, a 2019 Ford Explorer Police Intercept, bearing the vehicle identification number 1FM5K8AR5KGB55435, and purchased, titled, and used by the City of Universal, Texas, and used in the course of business for Universal City Police Department as a patrol vehicle.

16. On or about November 22, 2021, the Vehicle was inspected by J. Eftekhar & Associates, an independent ASE Master Technician ("**Inspector**"). The resulting inspection report dated December 29, 2021, showed that, "The carbon monoxide levels were measured

inside the vehicle with the vehicle at idle and the AC on with fresh air and the blower position at 3. After 30 minutes at idle, the carbon monoxide levels increased from 8 ppm to 13 ppm." and "The subject vehicle exhibited elevated levels of carbon monoxide during my inspection and testing." Had the expert permitted the vehicle to continue idling, the levels of CO would have continued to climb to the near fatal levels endured by Bellamy.

## VI.  CAUSE OF ACTION – NEGLIGENCE/GROSS NEGLIGENCE

17.  Plaintiff incorporates the above paragraphs as if set forth in full below. Defendant Ford manufactured, assembled, marketed and sold the Vehicle, which was unreasonably and dangerously defective in its design, manufacturing, assembly and marketing. The Vehicle originally sold by Northside Ford, located in San Antonio, Texas.

18.  As early as 2010, Ford Explorer owners complained to Ford or federal regulators that they suspected exhaust fumes have seeped into their vehicles' cabins. This problem was particularly noted in the police vehicles sold as the "Intercept". Complaints were made to the National Highway Traffic Safety Administration (**"NHTSA"**) and continued in 2017 in which police departments around the country began to report incidents where their officers were experiencing exposure to carbon monoxide from their police vehicles. The result of these claims sparked NHTSA to begin investigating the allegations, which led to widespread recalls and aftermarket repairs to deal with the dangerous defect. Ford knew that the Intercept model had dangerous defects relating to the potential for carbon monoxide to enter the cabin and rise to dangerous levels, and did not resolve the issue in later models, like the one Bellamy was driving that day.

19. Defendant Ford owed Plaintiff Bellamy a duty of care to act as a reasonably prudent person or manufacturer would. Defendant committed acts of omission and commission, which collectively and severally constituted negligence and gross negligence. Their negligent and grossly negligent acts included, but are not limited to, the following:

a) Designing, manufacturing, and assembling the Vehicle in such a way that exhaust and other gasses, including poisonous carbon monoxide, are allowed to enter the cabin of the vehicle.

b) Designing, manufacturing, and assembling the bumpers and/or tailpipes of the Vehicle such that exhaust and other gasses, including poisonous carbon monoxide, may accumulate behind the bumper and within the interior and exterior panels, allowing those gasses to permeate the cabin of the vehicle.

c) Designing, manufacturing and assembling the Vehicle using defective rear air extractors which permit exhaust and other gasses, including poisonous carbon monoxide, to enter the cabin of the vehicle.

d) Designing, manufacturing and assembling the lift-gate in the rear of the Vehicle using defective drain valves, which permit exhaust and other gasses, including poisonous carbon monoxide, to enter the cabin of the vehicle.

e) Designing, manufacturing and assembling the Vehicle with sheet metal panels and overlaps which permit exhaust and other gasses, including poisonous carbon monoxide, to enter the cabin of the vehicle.

f) Designing, manufacturing and assembling the Vehicle with joints and seams which permit exhaust and other gasses, including poisonous carbon monoxide, to enter the cabin of the vehicle.

g)  Designing, manufacturing, and assembling the Vehicle with rear auxiliary air conditioning system parts which are defectively designed and/or located too close in proximity to the driver side rear air extractor, such that exhaust and other gasses, including poisonous carbon monoxide, may enter the auxiliary air conditioning system and the passenger cabin of the vehicle.

h)  Negligent and defective marketing of the Vehicle, including mislabeling, improper instructions for use, and failure to warn regarding the Defects.

20. Ford's first attempt to quell the concerns—through repair instructions the company provided to dealerships in 2012—was followed by repeated updates and several additional instructions. Ford said it's confident in its most recent repair campaign, which was offered in 2017 and is still in effect. Yet, Ford has failed to sufficiently address these dangerous and deadly defects and breached its duty to Bellamy by refusing to adopt additional safeguards or to fix the issues with its Explorer models. Ford has intentionally decided not to remedy these issues and must be held liable and accountable, especially when it has detailed knowledge of the risks and dangers to owners and drivers associated with its Explorer models.

21. Per Reuters, "Though Ford actively does not comment on open litigations, the company is seemingly aware that something's amiss. In December, it issued a technical service bulletin to dealers acknowledging that some Explorers from model years 2011 to 2013 "may exhibit an exhaust odor in the vehicle with the auxiliary climate control system on."

22. It's painfully clear that Ford has made the decision not to recall any of its Explorer vehicles, knowing that the Vehicle is defective and poses an inherent risk of injury to the public, including first responders like Bellamy. Ford has made the decision to continue to profit from the sales of these dangerous vehicles and the benefits to its share price instead of

taking the necessary steps to ensure the safety and trust of the public and first responders.

23. Bellamy was exposed to CO while sitting in his Vehicle and inhaling CO from the Vehicle causing him to loss consciousness, vomit while unconscious and aspirate fluids into his lungs, and causing the serious injuries he has sustained in the past and will suffer in the future. Ford's breach of duty proximately caused injury to Bellamy, which resulted in the Bellamy's injuries and damages.

### VII.   CAUSE OF ACTION – STRICT LIABILITY—DESIGN DEFECT

24. Plaintiff incorporates the above paragraphs as if set forth in full below.

25. At all material times, Ford Motor Company was in the business of designing, developing, manufacturing, and marketing the Explorer model, and did in fact design, develop, manufacture, market, sell, and place into the stream of commerce the subject vehicle which injured Plaintiffs, including their Police Intercept model.

26. At the time of the incident made the basis of this lawsuit, the Vehicle was in substantially the same condition as it was when it left the control of Ford. Ford recommended, sold, and distributed the Vehicle at issue. The subject product was defective and unreasonably dangerous in manufacture and marketing when it left the control of Ford. The Vehicle at issue failed to perform safely, as an ordinary consumer would expect when using it in an intended and/or reasonably foreseeable manner. The risk of danger inherent in the design of the Vehicle outweighed the benefits of the design utilized. At all relevant times and at the time of injury, it was reasonably foreseeable by Ford that the Vehicle would malfunction.

27. The aforementioned defects in the system at issue were the producing and proximate cause of the crash incident that caused Bellamy's damages, injuries, pain and suffering, and mental anguish. Ford is strictly liable for the defects in the Vehicle.

## VIII. STRICT LIABILITY, MANUFACTURING DEFECT

28. Plaintiff incorporates the above paragraphs as if set forth in full below.

29. At all material times, Ford was in the business of developing, manufacturing, and marketing the Vehicle, and did develop, manufacture, market, sell, and place into the stream of commerce the subject vehicle that injured Bellamy. The Vehicle in question contained a manufacturing defect when it left Ford's possession. The Vehicle failed to detect the defect in Bellamy's vehicle, and therefore failed to avoid the incident that proximately caused the Bellamy's injuries. The defects in the Vehicle were the producing and the proximate cause of the incident that injured Bellamy and of Bellamy's damages, injuries, pain and suffering, and mental anguish.

## IX. DAMAGES

30. Plaintiff incorporates the above paragraphs as if set forth in full below.

31. As a direct and proximate result of the foregoing events, Bellamy suffered damages in the past and, in reasonable probability, will continue to suffer damages in the future, including physical pain and suffering, mental anguish, lost wages, loss of earning capacity, past, present, and future medical expenses, all for which Bellamy seeks recovery herein.

32. The conduct of Defendant FORD MOTOR COMPANY as described above constituted gross negligence, as clear and convincing evidence will show that, viewed objectively, Ford's conduct caused an extreme degree of risk, and Ford was consciously indifferent to the rights, safety and welfare of others, including Bellamy.

33. Bellamy asks that exemplary damages be awarded against Ford Motor Company to Bellamy as provided in Section 41.003, Texas Civil Practice and Remedies Code.

## X. PRAYER

34. WHEREFORE, PREMISES CONSIDERED, Plaintiff prays for judgment against Defendant for actual damages for past and future pecuniary losses, lost wages, loss of earning capacity, mental anguish, pain and suffering and past, present, and future medical expenses; as well as exemplary damages; attorney's fees and costs if permitted under relevant statute or by equity; pre- and post-judgment interest as allowed by law; and all such other and further relief, at law and in equity, to which he may be justly entitled.

Respectfully Submitted,

MUERY & FARRELL, PC
6200 La Calma
Suite 100
Austin, Texas 78752
Tel: (737) 808-0529
Fax: (512) 727-6626

By: _____
Maureen Farrell
State Bar No. 24076378
E-Service: filing@texanlegal.com
Email: maureen@texanlegal.com
*Attorney for Plaintiff Jeremy Bellamy*