UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

**JEREMY BELLAMY,**

  *Plaintiff*,

v.                                          Case No. SA-22-CV-00941-JKP

**FORD MOTOR COMPANY,**

  *Defendant*.

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Ford Motor Company's Motion for Summary Judgment and Plaintiff Jeremy Bellamy's Response. *ECF Nos. 37,48,60,61*. Upon consideration, the Motion for Summary Judgment is DENIED.

### Undisputed Factual Background

On March 22, 2021, Plaintiff Jeremy Bellamy was on duty for the Universal City Police Department in his assigned patrol vehicle, a 2019 Ford Explorer Police Interceptor, which was manufactured and retrofitted for police work by Ford. While on duty, Bellamy parked the vehicle on a neighborhood street with the engine idling. Later, a civilian noticed him unconscious and unresponsive inside the Interceptor and called emergency responders. Bellamy was taken to the hospital by ambulance where he was diagnosed with carbon monoxide poisoning based on blood testing and his clinical presentation as well as pneumonia.

Bellamy filed this suit against Ford asserting causes of action for negligence in the design, manufacture, and marketing of the Interceptor, strict liability for design defects, and strict

liability for manufacture defects. *ECF No. 1-5 pp. 5–9*. Bellamy alleges defects in the design and manufacturing of the Interceptor allowed harmful levels of carbon monoxide into the cabin, causing him permanent injury. *Id*. Bellamy alleges Ford's mislabeling, improper instructions for use, and failure to warn regarding the known defects constituted negligence and defective marketing.

Ford moves for summary judgment on all asserted causes of action. *Id. at p. 7*.

## Legal Standard

Summary judgment is appropriate if the record shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Rodriguez v. Pacificare, Inc.*, 980 F.2d 1014, 1019 (5th Cir. 1993).[1] "A fact is material only if its resolution would affect the outcome of the action." *Wiley v. State Farm Fire & Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009). A genuine dispute for trial exists if the record taken as a whole could lead a reasonable trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010). Because there must be a genuine dispute of material fact, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 247-48 (1986).

The moving party bears the initial burden of informing the court of the basis for the motion and of identifying those portions of the record which demonstrate the absence of a genuine dispute of material fact or the appropriateness of judgment as a matter of law." *Celotex Corp.,* 477 U.S. at 323; *Adams v. Travelers Indem. Co.*, 465 F.3d 156, 163 (5th Cir. 2006). The movant

---

[1] Although 2010 amendments replaced "issue" with "dispute," the summary judgment standard "remains unchanged." Fed. R. Civ. P. 56 advisory committee notes (2010 amend.).

is not required to negate the elements of the nonmovant's case but may satisfy its summary judgment burden by demonstrating the absence of facts supporting specific elements of the nonmovant's cause(s) of action. *Little v. Liquid Air Corp.*, 37 F. 3d 1069, 1075, 1076 n. 16 (5th Cir. 1994).

To satisfy this burden, the moving party must provide affidavits or identify any portion of the pleadings, discovery or admissions that demonstrate the absence of a triable dispute of material fact. *Celotex Corp.*, 477 U.S. at 323; *Rodriguez*, 980 F.2d at 1019. "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014).

If the movant carries its initial burden, the burden shifts to the nonmovant to present competent summary judgment evidence showing the existence of a genuine dispute of material fact. *Matsushita*, 475 U.S. at 586-87; *see also* Fed. R. Civ. P. 56(c). Upon the shifting burden, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Houston, Tex.*, 337 F.3d 539, 541 (5th Cir. 2003); *see also Eason v. Thaler,* 73 F.3d 1322, 1325 (5th Cir. 1996). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which this evidence raises a genuine dispute of material fact. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)(citing *Forsyth v. Barr,* 19 F.3d 1527, 1537 (5th Cir. 1994)). Further, should the nonmoving party fail "to address or respond to a fact raised by the moving party and supported by evidence, the court may consider the fact as undisputed" and "[s]uch undisputed facts may form the basis for a summary judgment." *Broadcast Music*, *Inc. v. Bentley*, SA-16-CV-394, 2017 WL 782932, at *2 (W.D. Tex. Feb. 28, 2017).

In determining the merits of a motion for summary judgment, a court has no duty to search the record for material fact issues or to find a party's ill-cited evidence. *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012); *Ragas*, 136 F.3d at 458. In addition, a court may not make credibility determinations or weigh the evidence and must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000); *Boudreaux v. Swift Transp. Co.*, *Inc.*, 402 F.3d 536, 540 (5th Cir. 2005)(citations omitted).

## Discussion

1. **Abandonment of Marketing Defect, Negligent Marketing, and Manufacturing Defect Causes of Action**

As a preliminary matter, Ford contends Bellamy abandoned his causes of action for marketing defect and manufacturing defect by failing to properly plead these causes of action and by failing to obtain necessary expert-opinion testimony to support them. For these reasons, Ford contends it is entitled to summary judgment on these two causes of action as a matter of law.

This argument for summary judgment fails. Bellamy has not abandoned these causes of action and provides argument and evidence against summary judgment on these causes of action in its Response to the Motion for Summary Judgment. Bellamy pleads sufficient bases to support these causes of action, and this argument is improper grounds for summary judgment at this time. Any argument pertaining to insufficient expert testimony or other evidence to support all of the asserted causes of action will be addressed below.

For these reasons, Ford's Motion for Summary Judgment on the marketing defect, negligent marketing, and manufacturing defect causes of action based upon abandonment will be denied.

2. **No-Evidence Motion for Summary Judgment**

In appears from Ford's arguments for summary judgment that it attempts to assert this Motion as a "no-evidence" summary judgment motion. However, federal courts do not recognize the no-evidence motion for summary judgment; this type of motion may be filed in Texas state courts, but not in any federal court. *See Wilson v. Tessmer Law Firm, PLLC*, 483 F.Supp.3d 416, 423–24 (W.D. Tex. 2020); *Bank of Am., N.A. v. Fulcrum Enterprises, LLC*, 20 F.Supp.3d 594, 602 (S.D. Tex. 2014). In a federal court, the party moving for summary judgment must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, discovery, admissions, or affidavits that demonstrate the absence of genuine factual disputes. *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). However, even though Ford does couch its arguments in the form of stating Bellamy has no evidence to prove essential elements of his causes of action, Ford does refer to the deposition and reports of Bellamy's expert witness to support its position. As such, to the extent possible, the Court will consider Ford's Motion for Summary Judgment as a standard motion for summary judgment asserting the absence of genuine factual disputes on essential elements and entitlement to summary judgment as a matter of law.

3. **Necessity of Specific Expert Opinion Testimony**

As premise for its Motion for Summary Judgment, Ford argues Bellamy's various causes of action, including negligence, "are all a 'products liability action'" pursuant to Texas Civil Practice & Remedies Code § 82.001(2). For this reason, Ford alleges that to prove all of these asserted causes of action, Bellamy "must show that an unreasonably dangerous defect caused his injuries," and in automobile-defect cases like this one, Bellamy "must use expert testimony to prove the existence of a defect that allegedly caused his injuries because the matters are 'beyond

jurors' common understanding.'" It appears Ford attempts to argue that because Bellamy does not have an expert witness who will opine on the existence of a defect in the Interceptor at issue, all of Bellamy's causes of action fail as a matter of law.

Bellamy presents evidence from an expert witness about the existence of a defect in the Interceptor that caused Bellamy's injuries. The credibility and weight of this expert-witness testimony are matters for the jury to consider. Therefore, in the event Ford makes this argument, its Motion for Summary Judgment based upon the argument that Bellamy lacks necessary expert-witness testimony will be denied.

### 4. Identification of a Safer Alternative Design

Ford contends it is entitled to summary judgment on Bellamy's product liability cause of action based upon a design defect because Bellamy "did not plead that a safer alternative design existed, has disclosed no witness to present one, and has proffered no evidence or testimony on one either." Because a safer alternative design is a necessary element of the design-defect cause of action, and Bellamy has no expert witness to testify to this element, Ford contends it is entitled to summary judgment as a matter of law. This Court will address this argument under the assumption that Ford satisfied its summary judgment burden to demonstrate the absence of facts supporting this element of the design defect cause of action.

The elements of a product liability cause of action arising out of a design defect are: (1) the product was defectively designed so as to render it unreasonably dangerous; (2) a safer alternative design existed; and (3) the defect was a producing cause of the injury for which the plaintiff seeks recovery. *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 311 (Tex. 2009).

Bellamy presents an expert witness, Russell Gill, who opines that a defect in the design and manufacture of the Interceptor allowed carbon monoxide to enter the cabin, and this problem

could be resolved. *ECF No. 37, exh 14, Deposition of Gill, pp. 6:10 – 9:3*. Bellamy also presents evidence of Ford's production of documents showing holes or vents from the factory manufacturing process could be pathways of intrusion, and the holes could be fixed to prevent intrusion. *See ECF No. 37, exh.8, pp. 16-17; ECF No. 48, exhs. 8,9,14, 17*. This evidence is sufficient to raise a genuine dispute of material fact whether a safer alternative design exists. Consequently, Ford's Motion for Summary Judgment based upon this argument will be denied. The credibility and weight of this expert-witness testimony are matters for the jury to consider.

### 5. Identification of a Specific Design Defect

Ford contends it is entitled to summary judgment on Bellamy's product liability cause of action based upon a design defect because Bellamy does not have an expert witness who will identify a specific design defect that caused his injuries. Ford contends Bellamy must present evidence to disprove any other reason that is a potential cause of his injuries. This Court will address this argument under the assumption that Ford satisfied its summary judgment burden to demonstrate the absence of facts supporting this element of the design defect cause of action.

In seeking summary judgment based upon this point, Ford attempts to use its own arguments and theories as basis for summary judgment. However, identification of a specific design defect is not an element of the design defect cause of action. *See Timpte Indus., Inc.*, 286 S.W.3d at 311. Instead, to prove this cause of action at trial, Bellamy must show the Interceptor was defectively designed so as to render it unreasonably dangerous. *See id*. Ford's contention that any leaks of carbon monoxide that entered the cabin of the Interceptor were not a design defect or were within Ford's own tolerances are arguments Ford may make to the jury, but do not serve as basis for summary judgment as a matter of law on this cause of action. In addition, Bellamy is

not required to negate any other potential causes of his injuries to defeat summary judgment. Alternative causes may be a theory Ford may pursue at trial.

Because Bellamy presents evidence from an expert witness to raise a genuine dispute whether a design defect and a safer alternative design existed, he presents enough to raise a genuine dispute of material fact on this cause of action to survive summary judgment. Ford's theories to dispel or discredit Bellamy's evidence and the credibility and weight of this evidence are matters for the jury to consider.

### 6. Manufacturing Defect: Deviation from Ford's Specifications

The elements of a product liability cause of action arising out of a manufacturing defect are: (1) the product deviated in its construction or quality from its specifications or planned output in a manner that rendered it unreasonably dangerous, (2) the product was defective when it left the hands of the manufacturer, and (3) the defect was a producing cause of the plaintiff's injuries. *Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 41-43 (Tex. 2007); *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004); *Brooks v. Knapheide Mfg. Co.*, 707 F.Supp.3d 680, 694 (E.D. Tex. 2023).

Ford contends it is entitled to summary judgment on this cause of action because Bellamy's liability expert, Russell Gill, did not review the relevant specifications for the Interceptor and because, by Gill's own admission, the identified leaks at the exhaust tip and near the resonator did comply with Ford's specifications. Thus, Ford contends Bellamy's failure to identify if and how the Interceptor deviated from Ford's specifications entitles it to summary judgment on the product liability cause of action based upon a manufacturing defect. The Court will address this argument under the assumption that Ford satisfied its summary judgment burden to demon-

strate the absence of facts supporting the first element of the manufacturing defect cause of action: the Interceptor deviated in its construction or quality from its specifications.

In his Response, Bellamy presents sufficient evidence to raise a genuine dispute of material fact on this issue through its expert witness Russell Gill and other documentary evidence. Gill opined on manufacturing defects on factory-installed exhaust components by identifying exhaust leaks from incomplete welds at the Ford factory. In his Report, Gill states:

> My testing and analysis of the subject vehicle revealed exhaust leaks present on factory installed components that provided a source for exhaust fumes and carbon monoxide. When the vehicle had been driven and subsequently parked and let idle, the exhaust fumes and carbon monoxide would enter the passenger compartment through the fresh air vent. The longer the vehicle would set at idle the concentration of CO would increase. This ultimately led to the carbon monoxide poisoning experienced by Officer Bellamy.

*ECF No. 48, exh. 10, Russell Gill Expert Reports, par. 31*. Gill also testified in his deposition about a defect pertaining to the entire design of the Interceptor which allowed carbon monoxide to intrude into the cabin, and this testimony did not exclude manufacturing defects that might have contributed to the exhaust leaks. *ECF No. 37, exh. 5, pp.7:3-9:15*.

This evidence is sufficient to raise a genuine dispute of material fact whether the Interceptor deviated in its construction or quality from its specifications or planned output in a manner that rendered it unreasonably dangerous. Ford mischaracterizes Gill's opinions and presents its own theory to discredit Gill's opinion as basis for summary judgment. However, Gill opined and testified in his deposition to a defect relating to the entire design of the Interceptor which allowed carbon monoxide to intrude into the cabin in excessive amounts. This testimony is sufficient to raise a genuine dispute of material fact whether the Interceptor met Ford's specifications when it was originally manufactured and after Ford retrofitted it for police work. For this reason, Bellamy presents sufficient evidence to survive Ford's Motion for Summary Judgment on this

point. The credibility and weight of this evidence and Ford's theories of evasion of responsibility are matters for the jury to consider.

### 7. Marketing Defect Separate From Design Defect:

Ford contends it is entitled to summary judgment on Bellamy's marketing-defect cause of action because, as pleaded, it is not separate and distinct from the design defect cause of action. Ford contends Bellamy relies solely on the design defect as basis for the marketing defect, alleging Ford failed to warn users of the potentially dangerous design defect, rather than any alleged failure to warn, itself, caused the Interceptor to be unreasonably dangerous. Because Bellamy does not allege an independent marketing-defect cause of action, Ford contends it is entitled to summary judgment on this cause of action as a matter of law.

Ford seeks summary judgment on this cause of action as if Bellamy asserted a product liability cause of action based upon a marketing defect. However, Bellamy asserts only a cause of action for negligence based upon Ford's marketing of the Interceptor. Specifically, Bellamy alleges Ford's negligent acts include: "Negligent and defective marketing of the Vehicle, including mislabeling, improper instructions for use, and failure to warn regarding the Defects." *ECF No. 1-5, p. 6*. To the extent Ford contends this cause of action is really a products liability action pursuant to Texas Civil Practice & Remedies Code § 82.001(2), the Court will address this characterization.

A marketing defect (or failure to warn) occurs when a defendant knows or should have known of a potential risk of harm presented by a product but markets it without adequate warning of the danger or without providing instructions for safe use. *Samuell v. Toyota Motor Corp.*, No. MO-13-CV-47, 2015 WL 1925902, at *5 (W.D. Tex. Apr. 27, 2015); *Romo v. Ford Motor Co.*, 798 F. Supp. 2d 798, 807 (S.D. Tex. 2011). The elements of a product liability cause of ac-

tion based upon a marketing defect are: (1) a risk of harm exists that is inherent in the product or that may arise from the intended or reasonably anticipated use of the product; (2) the supplier of the product knows or reasonably should foresee the risk of harm at the time the product is marketed; (3) the manufacturer fails to warn of the risk of harm inherent in the product's intended use; (4) the lack of instructions or warnings renders the product unreasonably dangerous to the ultimate user or consumer; and (5) the failure to warn or instruct causes the user's injury. *Ranger Conveying & Supply Co. v. Davis*, 254 S.W.3d 471, 480 (Tex. App.—Houston [1st Dist.] 2007, pet. denied).

Ford mischaracterizes Bellamy's marketing-defect cause of action to provide basis for summary judgment. Bellamy responds to Ford's arguments, assert his marketing-defect product liability cause of action is based upon Ford's marketing of the Interceptor specifically for police work by stating it is "pursuit rated" and capable of long idling times. In this way, Bellamy contends this cause of action is separate and distinct from the design-defect cause of action because it is based upon Ford's knowledge of a dangerous condition created while idling on previous Interceptor models and was aware of similar complaints on the Interceptor at issue, yet, instead of warning users, Ford specifically marketed the Interceptor as capable of idling for long periods.

In the Original Petition, Bellamy alleges that at the time Ford produced the marketing materials for his 2019 Interceptor as specifically suitable and made for police work and capable of long idling times, it was negligent by failing to warn the eventual purchaser and user of known potential danger of idling and failed to provide instruction on how to prevent this known danger. Bellamy alleges Ford knew of catalyst degradation and cracks in the manifold in previous models which could create a danger of carbon monoxide entering the cabin while idling for an extended time, and for this reason, these previous models were the subject of an NHTSA investiga-

tion and resultant recall program. *ECF No. 1, exh. 5, p.5*. Bellamy alleges Ford did not inform police departments that exhaust and carbon monoxide intrusion issues were still being reported for 2018-2019 vehicles. Ford also actively discouraged the use of carbon monoxide detectors by law enforcement. Instead of warning police forces of these known dangers, Bellamy contends Ford marketed the 2019 Interceptor as specifically capable of long idling times. *Id*. at pp. 5-7.

Bellamy's presentation of the marketing defect cause of action is sufficient to differentiate it from the design defect cause of action. Bellamy presents evidence to raise a genuine issue of material dispute on Ford's knowledge of previous and current dangers and its marketing of the 2019 Interceptor without warning of this known danger. For this reason, Ford's contention for summary judgment on the marketing defect cause of action must fail. Any arguments to discredit Bellamy's theory of liability or supporting evidence are matters for the jury to consider and weigh.

8. *Res Ipsa Loquitur*

Ford contends it is entitled to summary judgment on any potential theory of *res ipsa loquitur* because Bellamy "never pled or otherwise indicated that he may pursue a *res ipsa loquitur* theory, and Texas law precludes [Bellamy] from doing so now—when his evidence as to any defect and causation has come up short." In the alternative, Ford contends it is entitled to summary judgment on this theory of recovery because it does not apply under these facts.

*Res ipsa loquitor* is an evidentiary point, not a cause of action or element of a cause of action, by which negligence may be inferred by the jury. *Garcia v. Ross Stores, Inc.*, 896 F. Supp. 2d 575, 581 (S.D. Tex. 2012)*; Haddock v. Arnspiger,* 793 S.W.2d 948, 950 (Tex. 1990); *Clay v. BMS, Inc.,* 61 S.W.3d 489, 492 (Tex.App.–San Antonio 2001, no pet.)(citing *Mobil Chemical Co. v. Bell,* 517 S.W.2d 245, 251 (Tex. 1974)). The effect of invocation of this theory

is to survive no-evidence procedural challenges. *Garner v. BP Prods. N. Am., Inc.*, No. CV G-07-221, 2008 WL 11388382, at *4 (S.D. Tex. Oct. 14, 2008); *Jones v. Tarrant Util. Co.*, 638 S.W.2d 862, 865 (Tex. 1982).

### A) Failure to Plead

A *res ipsa loquitur* theory need not be plead specifically because it is not a cause of action, and its applicability is determined after presentation of all evidence. Instead, the theory may be raised at the summary judgment or trial stage. *Dugas v. Kansas City S. Ry. Lines*, 473 F.2d 821, 825 (5th Cir. 1973); *see e.g., Stagg-Shehadeh v. LPM Mfg., Inc.*, No. CV H-18-4775, 2021 WL 2405605, at *13 (S.D. Tex. May 26, 2021), report and recommendation adopted, 2021 WL 2404350 (S.D. Tex. June 11, 2021); *Trepagnier v. Alimak Hek, Inc.*, No. 3:16-CV-615, 2018 WL 8951204, at *3 (S.D. Miss. Sept. 12, 2018), aff'd, 784 Fed. App'x. 195 (5th Cir. 2019). The cases cited by Ford do not support its contention that the theory of *res ipsa loquitur* must be plead specifically.

Bellamy first introduced his intention to assert a *res ipsa loquitur* theory in his response to Ford's motion to Strike Bellamy's expert witnesses and again asserts this intent in the Response to Ford's Motion for Summary Judgment. As discussed previously, Bellamy presents sufficient evidence to proceed on the asserted causes of action. Consequently, Ford's Motion for Summary Judgment on a theory of *res ipsa loquitur* based upon Bellamy's failure to plead this theory and failure to provide evidence of his asserted causes of action will be denied.

### B) Application

*Res ipsa loquitor* is a doctrine used in tort cases "when the circumstances surrounding an accident constitute sufficient circumstantial evidence of the defendant's negligence to support

such a finding." *Mathis v. Restoration Builders, Inc.*, 231 S.W.3d 47, 53 (Tex.App.—Houston [14th Dist] 2007, no pet.) (citing *Marathon Oil Co. v. Sterner*, 632 S.W.2d 571, 573 (Tex. 1982)). "The purpose of *res ipsa loquitur* is to relieve the plaintiff of the burden of proving a specific act of negligence by the defendant when it is impossible for the plaintiff to determine the sequence of events, or when the defendant has superior knowledge or means of information to determine the cause of the accident." *Turbines, Inc. v. Dardis*, 1 S.W.3d 726, 740 (Tex. App.—Amarillo 1999, pet. denied) (citing *Jones v. Tarrant Utility Co.*, 638 S.W.2d 862, 865 (Tex. 1982)). To establish a presumption of negligence under the *res ipsa loquitur* doctrine, a plaintiff must show: (1) an accident of this character would not ordinarily occur absent negligence; and (2) the instrument causing the injury was under the management and control of the defendant. *Mathis*, 231 S. W.3d at 53. "The instrumentality need not have been under the defendant's constant control; it is enough that "the defendant was in control at the time that the negligence inferable from the first factor probably occurred, so that the reasonable probabilities point to the defendant and support a reasonable inference that he was the negligent party." *Id*.

  Presuming Ford presented sufficient evidence to shift the burden to Bellamy, the Court finds Bellamy produced sufficient evidence to raise a genuine dispute whether the source of Bellamy's injuries could only have been caused by Ford's negligence, an issue which must be determined by a jury. Bellamy produces evidence which raises a genuine dispute whether the alleged design and manufacturing defects that allowed carbon monoxide to enter the passenger cabin could only have been caused by Ford's negligence. This evidence consists of Ford's production and responses to discovery. Bellamy's medical records immediately after the incident demonstrate the emergency room physicians concluded his clinical presentation in the emergency room was attributed to acute carbon monoxide poisoning, and other causes such as heart at-

tack and stroke were eliminated. Finally, Ford's contention that the Interceptor's age and usage eliminate application of res ipsa loquitur is without merit because these are simply relevant factors to be considered by the trier of fact. *Nissan Motor Co. v. Armstrong*, 32 S.W.3d 701, 709 (Tex. App.—Houston [14th Dist.] 2000, pet. filed, record requested). In addition,

Further, manufacturers' recall letters are admissible and establish the existence of a defect at the time the vehicle left the manufacturer's or seller's control if there is otherwise independent evidence of the existence of the defect in the specific vehicle in question. *Parsons v. Ford Motor Co.*, 85 S.W.3d 323, 330-31 (Tex. App.—Austin 2002, pet. denied). Bellamy presents summary judgment evidence that the subject Interceptor has been subject to multiple recalls and complaints by other owners and drivers.

This evidence is sufficient to raise a genuine dispute whether *res ipsa loquitur* is applicable in this case. For this reason, Ford's Motion for Summary Judgment on the potential application of *res ipsa loquitur* will be denied.

## Conclusion

For the reasons stated, Ford's Motion for Summary Judgment is DENIED.

It is so ORDERED.
SIGNED this 6th day of January, 2025.

_____
JASON PULLIAM
UNITED STATES DISTRICT JUDGE