## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **JEREMY BELLAMY,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 5:22-CV-00941-JKP-RBF** |
| | § | |
| **FORD MOTOR COMPANY,** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |

### FORD MOTOR COMPANY'S OPPOSED MOTIONS *IN LIMINE* NOS. 6–9

Defendant Ford Motor Company moves this Court *in limine* for an Order precluding any reference to, arguments concerning, or evidence about the following inadmissible matters:

6. Other lawsuits or customer complaints involving Ford or other automotive manufacturers

7. Presence or absence of a Ford representative at trial

8. Lay witness opinion testimony regarding medical causation

9. Requests to award specific dollar amounts for alleged future lost earnings or non-economic damages.

At minimum, Ford requests an Order requiring opposing counsel to first call to the attention of the Court, outside the presence of any juror, that they intend to raise such matters, allow Ford the opportunity to raise and argue its objections, and obtain a ruling regarding its admissibility.

### ARGUMENT[1]

**6. Other lawsuits or customer complaints involving Ford or other automotive manufacturers.**

Like every manufacturer, Ford has been involved in various litigations regarding the

---

[1] To avoid repetition, Ford refers the Court to the Legal Standard section provided in its contemporaneously filed Motion in Limine No. 3.

design, manufacture, and performance of its products. Like all manufacturers, it interfaces with government agencies and, at times, performs safety recalls. And like all companies, it has labor disputes. But this case involves none of that. The claims in this case are that the 2019 Ford Interceptor that Plaintiff used was susceptible to unsafe levels of carbon-monoxide intrusion. Ford is moving separately to exclude evidence of unrelated complaints and incidents involving other Ford retail Explorers and Police Interceptors (*see* Ford's Mot. in Limine No. 3), but it cannot anticipate the universe of unfairly prejudicial and irrelevant information that Plaintiff or his witnesses may attempt to inject in this case. To be relevant and admissible, evidence of other incidents "must pertain to other 'substantially similar' incidents." *See Nester v. Textron, Inc.*, No. 1:13-CV-920-DAE, 2015 WL 7272249, at *3 (W.D. Tex. Nov. 17, 2015); *see also Jackson v. Firestone Tire & Rubber Co.*, 788 F.2d 1070, 1082 (5th Cir. 1986) ("Evidence of similar accidents occurring under substantially similar circumstances and involving substantially similar components may be probative of defective design.").[2] Across the board, however, Ford's involvement in other matters, issues involving other automakers altogether, or instances of completely unrelated vehicle parts are irrelevant to Plaintiffs' allegations. The Court should exclude all evidence, argument, or comment about unrelated lawsuits, settlements, verdicts, judgments, orders, recalls, investigations, consumer complaints, safety campaigns, or labor disputes involving other Ford vehicles or other manufacturers.

A.    Evidence relating to other alleged issues with Ford vehicles should be excluded.

Evidence about, for instance, Ford's recall of certain vehicles for isolated electronic issues with rearview cameras does not make more or less probable any fact about alleged unsafe CO intrusion

---

[2]    Throughout, unless otherwise noted, all emphasis and alterations are added, and all internal quotation marks, citations, and footnotes are omitted.

into the 2019 Interceptor. Nor does Ford's recall of other vehicles for airbag inflators. Likewise, verdicts in other Ford cases, including those involving roof structure, could not impact the facts of consequence here. None of these incidents occurred "under substantially similar circumstances" or involved "substantially similar components" as those alleged here—an allegedly defective condition allowing CO intrusion into the 2019 Interceptor. *See Jackson*, 788 F.2d at 1082; *see also Nester*, 2015 WL 7272249, at *3. Because such evidence is irrelevant to any fact at issue and serves only to poison the jury against Ford, all unrelated matters should be excluded under Rule 401 and Rule 403. *See* Fed. R. Evid. 401; 403.

      B.    <u>Evidence relating to issues involving other automotive manufacturers should also be excluded.</u> To the extent Plaintiff seeks to introduce evidence of lawsuits and other unrelated matters concerning the automotive industry, and not specific to Ford, this evidence must likewise be excluded. Courts routinely exclude evidence of wrongdoing involving other manufacturers because such evidence is irrelevant and contains a significant "risk of unfair prejudice posed by requiring [the defendant] to attest for lawsuits in which it was not involved." *Tyree v. Bos. Sci. Corp.*, No. 2:12-cv-08633, 2014 WL 5445769, at *7 (S.D.W. Va. Oct. 22, 2014); *see also Holland v. Walter Kidde Portable Equip., Inc.*, No. 2:05-cv-325, 2008 WL 11375379, at *1 (N.D. Ala. Apr. 17, 2008) (settlements involving other manufacturers irrelevant). Facts about cases, advertising, or conduct involving any other manufacturer are irrelevant and thus inadmissible under Rule 401. The same holds true for evidence about Takata airbags, Volkswagen diesel emissions, or any other non-Ford conduct. This evidence all should be excluded under Rule 401. *See Holland*, 2008 WL 11375379, at *1.

      Further, the introduction of evidence or argument regarding other automotive-defect cases is likely to confuse a jury by presenting facts that have no bearing on any issue for a jury's

determination. It also carries the substantial risk of unfairly prejudicing a jury against Ford by introducing, highlighting, or suggesting alleged wrongs or misconduct engaged in by other automotive manufacturers. Permitting such evidence or argument carries grave risk that a jury will be inclined to punish Ford for the alleged conduct of unrelated non-party automakers or to make unfavorable assumptions about the automotive industry in general. The very high likelihood that evidence or argument regarding other automotive defect cases will confuse and unfairly prejudice a jury substantially outweighs any scant probative value such evidence could conceivably offer. Such evidence and argument should be therefore also excluded under Rule 403.

**7.    Reference to the presence or absence of a Ford representative at trial.**

Plaintiff should be precluded from making any reference to the fact that Ford may not have a representative at trial at any particular time or to Ford's choice of its corporate representative as not being the appropriate person to respond to Plaintiff's allegations. The existence or nonexistence of a corporate representative is non-evidentiary. It has no bearing upon any issue to be decided by the jury. As a court in this Circuit has explained, "any reference to the absence of a corporate representative at counsel table during trial is not relevant to any issue in the case. Even if marginally relevant, the probative value of any such reference would be substantially outweighed by the dangers of unfair prejudice, confusing the issues, misleading the jury, and wasting time." *Woulard v. Greenwood Motor Lines, Inc.*, No. 1:17CV231, 2019 WL 3318467, at *6 (S.D. Miss. Feb. 4, 2019), *Hankins v. Ford Motor Co.*, No. 3:08-cv-639, 2012 WL 174793, at *10 (S.D. Miss. Jan. 20, 2012)).[3]

Ford's corporate representatives' inability to attend any portion of the trial has no bearing

---

[3]    *Accord, e.g.*, *Riley v. Ford Motor Co.*, No. 2:09-CV-148, 2011 WL 3273592, at *3 (S.D. Miss. July 29, 2011); *Bradley v. Cooper Tire & Rubber Co.*, No. 4:03CV0094, 2007 WL 9775644, at *4 (S.D. Miss. Mar. 16, 2007).

on how seriously Ford takes the proceedings or Ford's level of concern for Plaintiff. But highlighting the absence of corporate representatives would suggest to jurors that Ford does not care about Plaintiff or his lawsuit and might lead jurors to infer liability or conscious indifference based on facts wholly irrelevant to the merits of Plaintiff's claims. This suggestion is unfairly prejudicial as it inflames the passions of the jury. *See* Fed. R. Evid. 403. Painting an unfavorable picture of Ford based on trial attendance is not relevant to the design of, manufacture of, or warnings about the 2019 Interceptor. Therefore, the Court should not permit Plaintiff, his counsel, or his witnesses to point out, or otherwise comment on, the presence or absence of a corporate representative.

8.    **Lay witness opinion testimony regarding medical causation.**

The Court should preclude lay witnesses, including the Plaintiff and his family members, from opining about whether Plaintiff suffered CO poisoning or whether any of his purported symptoms are consistent with CO poisoning. In general, "a non-physician is not qualified to give medical testimony." *Carlson v. Bioremedi Therapeutic Sys., Inc.*, 822 F.3d 194, 199 (5th Cir. 2016); *McGee v. Dolgencorp, LLC*, No. 5:14-CV-90, 2016 WL 5936885, at *3 (S.D. Miss. Oct. 12, 2016) ("As a lay person, [the plaintiff] is not qualified to testify about the medical diagnosis of his back injury or any necessary treatment thereof. He is also not competent to testify about his own medical prognosis or treatment, or medical causation. Such testimony must be given by a medical expert."); *Rey v. State*, No. 11-17-00208-CR, 2019 WL 3822185, at *5 (Tex. App.— Eastland Aug. 15, 2019) ("Although a lay witness is generally competent to testify as to the facts surrounding a medical condition, a lay witness may not give opinions as to cause, diagnosis, or

treatment of medical problems.").[4] *Cf. Ake v. Oklahoma*, 470 U.S. 68, 80 (1985) ("Unlike lay witnesses, who can merely describe symptoms they believe might be relevant to the defendant's mental state, psychiatrists can identify the 'elusive and often deceptive' symptoms of insanity, and tell the jury why their observations are relevant."). The Court should preclude lay witnesses, including the Plaintiff and his family members, from opining about whether Plaintiff suffered CO poisoning or whether any of his purported symptoms are consistent with CO poisoning.

**9.     Requests to award specific dollar amounts for alleged future lost earnings, loss of earning capacity, or non-economic damages.**

The Court should preclude Plaintiff and his counsel from arguing, requesting, or suggesting any specific dollar amount that the jury should award Plaintiff for his alleged future lost earnings, loss of earning capacity, or non-economic damages.

Rule 26(a) requires a plaintiff to disclose, "without awaiting a discovery request," a "computation of each category of damages claimed by" him. Fed. R. Civ. P. 26(a)(1)(A)(iii). And when the plaintiff "learns that in some material respect the disclosure or response is incomplete or incorrect," he must, "in a timely manner," "supplement or correct" that disclosure  and any response. Fed. R. Civ. P. 26(e)(1). Where the plaintiff fails to timely disclose or supplement information or witnesses, then the sanction is automatic: he "is not allowed to use that information

---

[4]     *See also Gray v. Clark*, 654 F. Supp. 3d 1062, 1071 (E.D. Cal. 2023) ("[C]ourts do not allow lay witnesses to testify as to the cause, effect, diagnosis or prognosis of their injuries, because such opinions require testimony from a medical expert."); *Gov't Emps. Ins. Co. v. Seco*, 644 F. Supp. 3d 1309, 1313 (S.D. Fla. 2022) ("Medical diagnoses and medical causation opinions ordinarily present technical and scientific issues that require the specialized knowledge of an expert witness."); *Crawford v. Davis*, 597 F. Supp. 3d 1243, 1245 (S.D. Ill. 2022) ("Rule 701 does not permit a lay witness to offer opinions about medical causation."); *Good v. BioLife Plasma Servs., L.P.*, 605 F. Supp. 3d 947, 965, 967 (E.D. Mich. 2022) ("Plaintiff may testify to the timing, nature, and extent of her hearing loss, but she may not testify to its cause . . .. As with Plaintiff's hearing loss, Plaintiff and her family members may testify to any changes in Plaintiff's personality that they have direct experience with. They may not, however, testify to the cause of those injuries.").

or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Plaintiff, despite repeatedly amending his Rule 26(a)(1) disclosures, failed to provide an amount of or computation for his alleged future lost earnings or non-economic damages and that failure was not substantially justified or harmless. The Court should therefore preclude Plaintiff from suggesting to the jury that he should recover a certain amount for either category.

A.    Plaintiff's Rule 26(a)(1)(A)(iii) disclosures have never provided an amount of or computation for future lost earnings or non-economic damages.

In his Initial Disclosures, served on October 30, 2022, for his Rule 26(a)(1)(A)(iii) damages computation, Plaintiff provided that:

> Plaintiff seeks damages suffered in the past and reasonably will continue to suffer in the future; including physical pain and suffering, mental anguish, lost wages, loss of earning capacity, past, present, and future medical expenses. . . . Plaintiff's exact damages are still being calculated as Plaintiff is still obtaining medical bills and records from various medical providers. . . .

Ex. A, Pl.'s Initial Discls. at 6. Plaintiff did not disclose any specific dollar amount for alleged lost wages, loss of earning capacity, or non-economic damages. He also noted, under the expert heading that he "expects to instruct [*sic*] experts regarding Plaintiff's future loss of earnings, including economists or life plan experts." *Id.* at 7.

Plaintiff served his First Amended Disclosures on February 12, 2024, Ex. B, and his Second Amended Disclosures on February 19, 2024, Ex. C. These disclosures repeated the same answers—no specific dollar amounts for alleged lost wages, loss of earning capacity, or non-economic damages and that he would disclose a future expert on lost earning capacity.

Then, just before midnight on March 7, 2025, Plaintiff served his Third Amended Disclosures. Ex. D. This time for his Rule 26(a)(1)(A)(iii) damages computation, Plaintiff provided that:

> Plaintiff seeks damages suffered in the past and reasonably will continue to suffer in the future; including physical pain and suffering, mental anguish, incapacitation, loss of earning capacity, and future medical expenses. . . . Plaintiff's non-economic damages are not susceptible to being calculated. Plaintiff's loss of earning capacity and future medical expenses will be based on his past income and estimates within the knowledge and understanding of the jury. All documents supporting these damages have been produced to the Defendant.

*Id*. at 9. Like the prior versions, this new disclosure still failed to disclose a specific dollar amount for alleged loss of earning capacity (presumably "lost wages" is now subsumed in "loss of earning capacity) or non-economic damages. But this time, the response deleted Plaintiff's claim for past medical damages (another category for which Plaintiff has never provided a specific amount or computation).

In all, with trial less than 3 weeks away, Plaintiff has never disclosed an amount of or computation for future lost earnings, loss of earning capacity, or non-economic damages and has never disclosed any economist or vocational expert to provide testimony of any estimated future lost earnings.

B.  Rules 26 and 37 demand that Plaintiff be precluded from asking the jury for a specific dollar amount for lost earnings, lost earning capacity, and non-economic damages.

Where a plaintiff fails to disclose an amount or computation of his requested damages and that failure is not substantially justified or harmless, as here, the Court should preclude the plaintiff from suggesting to or asking the jury for a specific dollar amount for those damages. *See EEOC v. Serv. Temps Inc*., 679 F.3d 323, 334 (5th Cir. 2012) (affirming the district court's grant of a motion in limine prohibiting plaintiff from asking for a specific dollar amount for monetary damages because plaintiff had failed to provide a computations in its initial disclosures for compensatory or punitive damages); *CQ, Inc. v. TXU Min. Co., L.P.*, 565 F.3d 268, 279 (5th Cir. 2009) (affirming district court's grant of motion in limine precluding evidence of "alternative" damages calculations that had never been disclosed).

Here, Plaintiff has never disclosed a specific amount, or any computations, for his alleged future lost earnings or lost earning capacity damages, and Plaintiff cannot show that this failure was substantially justified or harmless. To determine whether a plaintiff's failure to disclose damages computations was substantially justified or harmless, the Court should evaluate: (1) the Plaintiff's "explanation for its failure to disclose the evidence," (2) "the importance of the evidence," (3) "the potential prejudice to [Ford] in allowing the evidence," and (4) "the availability of a continuance." *Id.* at 280.

1.   There is no good explanation for Plaintiff's failure to ever disclose how much he will seek to recover in future lost earnings or lost earning capacity damages or even how he would prove up such damages.

2. Evidence of future lost earnings or lost earning capacity damages, while "clearly important to [Plaintiff]," "is not essential to [Plaintiff's] underlying recovery." *See id.*

3. "[G]iven the advanced stage of the litigation, permitting the new evidence would not [be] harmless." *See id.*; *see also Hoffman v. Constr. Protective Servs., Inc.,* 541 F.3d 1175, 1179–80 (9th Cir. 2008) ("Later disclosure of damages would have most likely required the court to create a new briefing schedule and perhaps re-open discovery, rather than simply set a trial date. Such modifications to the court's and the parties' schedules supports a finding that the failure to disclose was not harmless.").

4. Regardless of whether a continuance may be available, since other factors "militate against permitting" untimely disclosed evidence, the "trial court [i]s not obligated to continue the trial . . . . Otherwise, the failure to satisfy the rules would never result in exclusion, but only in a continuance." *Hamburger v. State Farm Mut. Auto. Ins. Co.*, 361 F.3d 875, 883–84 (5th Cir. 2004).

The Court should therefore preclude Plaintiff from asking for or suggest to the jury a specific dollar amount for his future lost earnings or lost earning capacity damages. *See* Fed. R. Civ. P. 37(c); *see also EEOC v. General Motors Corp.*, No. 3:06–cv–19, 2009 WL 910812 at \*2–3 (S.D. Miss. Apr. 1, 2009) (holding that because the plaintiff had failed to disclose amounts and computations of damages, she would "not be permitted to suggest to the jury the amount of compensatory or punitive damages that should be awarded at trial").

The same is true regarding Plaintiff's claims for non-economic damages. A plaintiff may not be required under Rule 26 to calculate and disclose specific amounts for certain non-economic damages, such as emotional-distress damages. *See Williams v. Trader Publishing Co.*, 218 F.3d 481, 486 n.3 (5th Cir. 2000). However, if a plaintiff intends to suggest to the jury a specific dollar amount, then such information must be disclosed under Rule 26(a)(1)(A)(iii) or be excluded under Rule 37. *See Serv. Temps*, 679 F.3d at 334; *Chavez v. Home Depot USA, Inc.*, No. H-22-1700, 2023 WL 6811036 at \* 1 (S.D. Tex. Oct. 16, 2023) ("A specific statement of noneconomic damages is not required, so long as the plaintiff does not then suggest a specific noneconomic damages award to the jury. To the extent that Plaintiffs attempt to assign a specific dollar figure to their emotional distress damages at trial, Defendant may seek to exclude such evidence."); *Hovanec v. Miller*, 331 F.R.D. 624, 637 (W.D. Tex. July 22, 2019) ("[C]ourts have not required a Rule 26 computation regarding the amount of emotional distress-related compensatory damages claimed in cases in which the plaintiff does not intend to suggest an amount to the jury. In other words, if the plaintiff intends to suggest a specific amount of emotional distress-related compensatory damages to the jury, he or she must produce the disclosures required by Rule 26.").[5]

---

[5]     *See also Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 470 n.2 (N.D. Tex. 2005) (cautioning that "[t]o extent that Plaintiffs attempt to assign a specific dollar figure to their [unquantified] emotional distress damages at trial, Defendant may seek to exclude such evidence" under

Here, Plaintiff has never disclosed a specific amount for, or any computations of, his alleged non-economic damages. And like his failure to disclose the same information for his future lost earnings or lost earning capacity damages, this failure was not substantially justified or harmless. The Court should therefore preclude Plaintiff from asking for or suggest to the jury a specific dollar amount for his alleged non-economic damages.

The Court should preclude Plaintiff and his counsel from arguing, requesting, or suggesting any specific dollar amount that the jury should award Plaintiff for his alleged future lost earnings, loss of earning capacity, or non-economic damages.

## CONCLUSION

For the foregoing reasons, Ford requests that this Court enter an Order precluding any reference to, arguments concerning, or evidence about the foregoing inadmissible matters. At minimum, Ford requests an Order requiring opposing counsel to first call to the attention of the Court, outside the presence of any juror, that they intend to raise such matters, allow Ford the opportunity to raise and argue its objections, and obtain a ruling regarding its admissibility.

Dated: March 20, 2025

---

37.); *Goree v. City of Verona*, No. 1:17-cv-93, 2021 WL 4699204 at *4–5 (N.D. Miss. Oct. 7, 2021) (holding that plaintiff, who failed to provide computation of emotional distress injuries, would be allowed "to introduce proof in support of damages, but she shall not be permitted to suggest a specific amount of damages to the jury"); *Garcia v. Green*, No. 17-8126, 2019 WL 8972808, at *4 (E.D. La. Jan. 11, 2019) (ordering, where the plaintiff did not give a specific damages figure at any point during discovery, that she could "still introduce evidence of her emotional distress, mental anguish, and medical damages," but she "may not suggest to the jury a specific amount of damages").

Respectfully submitted,

THOMPSON, COE, COUSINS & IRONS L.L.P.
2801 Via Fortuna, Suite 300
Austin, Texas 78749
(512) 708-8200
(512) 708-8777 (fax)

By _____

    John W. Chambless (Attorney-in-Charge)
    State Bar No. 00796334
    Email: jchambless@thompsoncoe.com
    Ronald D. Wamsted
    State Bar No. 20832000
    Email: rwamsted@thompsoncoe.com

    Patrick X. Fowler (*pro hac vice*)
    Craig A. Logsdon (*pro hac vice*)
    SNELL & WILMER LLP
    One East Washington Street, Suite 2700
    Phoenix, AZ 85004-2556
    Telephone: (602) 382-6213
    Email: pfowler@swlaw.com
    Email: clogsdon@swlaw.com

    Derek J. Linkous
    BUSH SEYFERTH PLLC
    100 West Big Beaver Road, Suite 400
    Troy, MI 48084
    Email: linkous@bsplaw.com

    **ATTORNEYS FOR DEFENDANT**
    **FORD MOTOR COMPANY**

**CERTIFICATE CONFERENCE**

I hereby certify I conferred with counsel for Plaintiff regarding the foregoing motions and Plaintiff is opposed to the relief requested in the motions.

_____

John W. Chambless

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing instrument has been forwarded to all known counsel of record as set forth below in compliance with the Federal Rules of Civil Procedure on this 20th day of March 2025.

_____

John W. Chambless

13